UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-04924-BFM **Date:** September 4, 2026

**Title:** *Domingo Diego Cristobal v. Markwayne Mullin et al.*

================================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| | |
|---|---|
| Christianna Howard | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner | Attorneys Present for Respondent |
| N/A | N/A |

**Proceedings: (In Chambers) Order Granting Petition (ECF 1)**

Petitioner Domingo Diego Cristobal filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on August 27, 2026. (ECF 1 ("Pet.").) The Petition is fully briefed. (ECF 8 ("Answer").) For the reasons stated below, the Petition is **granted**.

## I. Factual Background

Petitioner is a noncitizen who is currently detained at the Adelanto ICE Processing Center, within the Central District of California. (Pet. ¶ 1.) He entered the United States without inspection in 2005 and has resided continuously in the United States since then. (Pet ¶ 34.) Petitioner has been steadily employed, has not been convicted of a crime, and has supported his two United States citizen children. (Pet ¶¶ 34-35.)

On June 14, 2026, he was driving to work when ICE agents pulled him over and immediately arrested him after asking if he had a driver's license or legal documents. (Pet ¶¶ 36-37.) Petitioner has been in custody since then, without a custody determination or redetermination. (Pet. ¶¶ 37-42.) While Petitioner was being transported to the San Bernardino ICE office, he was told

by an ICE officer that they had stopped him by mistake and showed Petitioner a photograph or another individual. (Pet ¶ 39.)

On June 24, 2026, Petitioner's counsel submitted a request for a custody redetermination hearing with the Adelanto Immigration Court. (Pet ¶ 45.) Petitioner and counsel receive no hearing notice for a custody redetermination hearing. (Pet ¶ 46.) Nevertheless, on June 26, 2026, Immigration Judge Patrick Barrett issued an order denying Petitioner's request for change in custody status because the court lacked jurisdiction. (Pet ¶ 47; ECF 1-1 at 19.)

Petitioner filed this Petition, alleging that his detention beyond statutory authority and due process violations all compel an order releasing him. (Pet ¶¶ 68-96.) In their Answer, Respondents state that Petitioner "appears" to be entitled to a bond hearing, but that since the Ninth Circuit's decision in *Rodriguez Vazquez*, a bond hearing should be his for the asking. (Answer at 3.) They thus argue that no relief should be granted. To the extent a bond hearing is "nonetheless affirmatively ordered here," Respondents ask that it be consistent with the orders entered in other similar cases—a hearing within seven days of any order. (Answer at 3.)

After reviewing the Petition and Answer, the Court finds no reason to hold its order pending Petitioner's reply and thus deems the Petition fully briefed.

## II. Analysis

Petitioner argues that his arrest and continued detention violate 8 U.S.C. § 1226(a), and due process. (Pet ¶¶ 68-96.) The Court concludes he is correct on his statutory argument and thus declines to consider his other arguments. Petitioner was taken into custody, and he was treated as an individual who was mandatorily detained under § 1225(a). (Pet ¶ 3.)

At the time Petitioner was detained, a judge of this Court had already declared unlawful DHS's policy of detaining individuals in Petitioner's position. *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1116, 1127 (C.D. Cal. 2025). Nonetheless, months after Judge Sykes issued her order, the Government continued to arrest and detain *Maldonado Bautista* class members under the putative authority of Section 1225(b), and then would readily concede the availability of a bond hearing under Section 1226(a) once the individual filed a habeas petition challenging their continued detention.

Recently, the Ninth Circuit weighed in and confirmed that, indeed, *Maldonado Bautista* class members were not properly detained under § 1225. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164-65 (9th Cir. 2026). In the period between *Maldonado Bautista* and *Rodriguez Vazquez*, hundreds, if not thousands of individuals were held without process that was owed to them. Many of those individuals, like the Petitioner here, are still in custody. Based on the Court's observations in this and other cases on her docket, Respondents apparently decided not to take any affirmative remedial steps to provide such individuals the process they were wrongly deprived. In fact, they don't even believe the Court should *now* order a bond hearing. (Answer at 2.) Instead, Respondents now argue that petitioners like this one should not be granted any form of relief because they did not ask for *review* of a detention decision that was never made. Or, callously, they suggest Petitioner can simply wait until the six-month mark when they will be offered a *Rodriguez* bond hearing. (Answer at 3.)

The Court will not accept Respondents' invitation to inaction. Following the decisions of courts across the Ninth Circuit that have considered this issue, the Court concludes that Petitioner is entitled to release due to the Government's violation of his statutory and constitutional rights.

A. **Lawfulness of Petitioner's Detention**

Section 1226(a) "sets out the general rule" for the arrest, detention, and release of noncitizens present in the country who are believed to be subject to removal. *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I-200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention based on their criminal history, 8 U.S.C. § 1226(c), DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer may release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an IJ *review* the DHS officer's determination at a bond hearing in immigration court. *See* 8 C.F.R. § 1236.1(d)(1) (permitting a noncitizen to request amelioration of the condition of release in front of an immigration judge "*after an initial custody determination*") (emphasis added), 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir.

2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

Petitioner received none of that process, because Respondents treated him as an individual detained under § 1225. He was apparently arrested without a warrant. (Pet ¶¶ 36-42.) Since he's been in custody, it appears there has been no finding that he is a flight risk or a danger—no initial determination, and no redetermination by an IJ. Petitioner's detention was therefore unlawful. *Aguilar-Garcia v. Noem*, No. 1:26-cv-01395-DC-DMC-HC, 2026 WL 1895472, at *1 (E.D. Cal. July 1, 2026), report and recommendation adopted, No. 1:26-cv-01395-DC-DMC (HC), 2026 WL 2138088 (E.D. Cal. July 24, 2026) (absent a pre-deprivation bond hearing pursuant to § 1226 (a), detention violated the INA).; *Nunez-Santillan v. Warden Desert View Facility*,

No. 5:26-cv-01171-AB-PD, 2026 WL 795475, at *1 (C.D. Cal. Mar. 19, 2026) (a "continued detention pursuant to § 1225(b) and without the bond hearing to which § 1226(a) entitles [petitioner] constitutes a violation of federal law").

Because it's important to the discussion of the appropriate remedy, the Court notes that this is not just a statutory violation, but a violation with constitutional dimensions. *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *5 (D. Nev. July 7, 2026) ("[T]his Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause"); *Bautista*, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"). *See also Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1033 (C.D. Cal. 2026) (finding that the Government's noncompliance with court orders requiring it provide 1226(a) bond hearings has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity").

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. By denying Petitioner the protections of § 1226(a), Respondents created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds, and that Petitioner is detained based solely on DHS's mistake with respect to the law that

governed his detention. Indeed, in their Answer, Respondents do not argue that Petitioner presents a danger or flight risk or that there is any other valid governmental interest advanced by his ongoing detention—nor has any DHS employee found it to be so.

**B. Remedy**

The question, then, is the proper remedy to be afforded. Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr.*, No. ED CV 26-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026) (underlining omitted). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

In so holding, the Court joins the growing number of courts in the Ninth Circuit who have found that the Government's noncompliance with *Bautista* and similar rulings warrants release. *See, e.g., Reyes*, 2026 WL 2069974, at *2; *Garcia-Maya*, 2026 WL 1965886, at *2; *Rodas-Dieguez v. Noem*, No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb.

26, 2026); *Maciel v. Noem*, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026). *See also Moctezuma v. Henkey*, No. 1:25-cv-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, these protections include: (1) the requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an IJ at a bond hearing; (4) the right to appeal an adverse IJ bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an IJ based on changed circumstances. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. *Rodriguez Diaz*, 53 F.4th at 1202.

But because the Government arrested Petitioner under the incorrect authority, Petitioner received none of these protections. It follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the

requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Id.* (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Here, Respondents do not defend their noncompliance with the *Maldonado Bautista* judgment, nor does it appear that they have taken remedial steps to conform their conduct now that *Rodriguez Bostock* has confirmed that their policy violated the law. Instead, they argue that individuals like Petitioner—who for months they led to believe had no right to a bond hearing—should be denied relief by this Court and go ask for a bond hearing. No.

The typical way that noncitizens request a bond hearing is by checking a box on the Form I-286 Notice of Custody Determination, which is issued to a noncitizen following the initial custody determination made by an ICE officer. *See Garcia-Maya*, 2026 WL 1965886, at *8. But DHS's new policy for noncitizens who entered without inspection "specifically instructs ICE agents against issuing any 'Form I-286, Notice of Custody Determination' to noncitizens like Petitioner, because individual custody determinations are only required under § 1226 by regulation." *Id.* at *5. The failure to do so is significant, because that form "provides the formal mechanism—a box the detainee may check—to immediately request a custody *redetermination* hearing (*i.e.* bond hearing) before [an] IJ." *Id.* at *8. Even if Petitioner could request such a hearing now, it would not remedy the fact that he was denied such a hearing at the outset of his case. The Court therefore rejects Respondents' suggestion that the Petition should be denied because Petitioner did not request a bond hearing after *Rodriguez Vazquez*, to seek reconsideration of a decision never made, based on a process that was not made

available to him, that was denied by the immigration courts when he pursued it at the outset of his detention.

Respondents alternatively argue that Petitioner can simply wait until the six-month mark and he will receive a *Rodriguez* bond hearing. (Answer at 3.) Petitioner came to the United States in 2005 and has lived here for more than 20 years. He was on his way to work when he was pulled because ICE officers mistook him for another person. (Pet ¶¶ 36-39.) He should only have been arrested with a warrant and should have been provided an immediate custody determination with immediate review. It is beyond cruel to suggest that this Court would let him sit in custody another three months, on the promise that he will have his detention reviewed six months in.

Instead, because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes*, 2026 WL 2069974, at *2; *Lujan*, 734 F.3d at 935.

This holding is not an outlier position. *See*, *e.g.*, *Valvuena v. Chestnut*, No. 1:26-cv-3889-DC-JDP, 2026 WL 1847366, at *4 (E.D. Cal. June 26, 2026) ("Here, I find that the 'typical remedy' of release is appropriate because the government has not provided a lawful justification for petitioner's detention."); *Carmona Ramirez v. Leyva*, No. 2:26-cv-01219-RFB-EJY, 2026 WL 1893553, at *3 (D. Nev. June 30, 2026) (ordering release, instead of a bond hearing, where petitioner was treated as an individual detained under § 1225; "Overall, the warrant requirement, the initial custody determination, and the full constellation of procedural safeguards embedded into § 1226(a) serve as powerful bulwarks against the arbitrary, erroneous, and unconstitutional deprivation of liberty. And, most importantly, they are mandatory under federal law.") (cleaned up); *Moreno Gomez v. Chestnut*, No. 1:26-cv-2195 DJC

AC, 2026 WL 1847362, at *4 (E.D. Cal. June 26, 2026) ("This court has regularly found that when ICE unlawfully detains a noncitizen under 8 U.S.C. § 1225(b)(2), does not assert an alternative lawful basis for petitioner's detention, and does not afford petitioner a bond hearing under 8 U.S.C. § 1226(a)—as is the case here—release is the appropriate remedy to preserve the *status quo ante litem*.") *report and recommendation adopted*, 2026 WL 1865734 (E.D. Cal. June 29, 2026); *C.H. v. Warden of California City Detention Facility*, No. 1:26-cv-02896-TLN-CSK, 2026 WL 1846528, at *1 (E.D. Cal. June 26, 2026) ("In light of these procedural deficiencies and blatant disregard for Petitioner's constitutional rights, the proper remedy here is not to allow the Government a second chance to come into conformity with the law—it is to release Petitioner from unlawful custody."); *Cruz v. Bondi*, No. 2:26-cv-01148-MMD-NJK, 2026 WL 1847392, at *3 (D. Nev. June 26, 2026) ("Here, Petitioner has been held in detention for nearly a year on an unlawful basis. The Court therefore finds that release, 'the typical remedy' for 'unlawful executive detention,' is the appropriate remedy here."); *Garcia-Castillo v. Noem*, No. 1:26-cv-0058 DAD AC, 2026 WL 1088807, at *2 (E.D. Cal. Apr. 22, 2026) ("Because respondents do not assert an alternative lawful basis for petitioner's detention, the court finds petitioner's detention violates INA § 236(a) and recommends that the petition be granted in part and petitioner be released."); *Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025) (ordering release of noncitizen challenging his detention without a bond hearing and collecting cases); *see also Feng v. Lyons*, No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (holding that a lengthy delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and finding that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right") (cleaned up); Order, *Lagunas Martinez v. Giles*, No. 5:26-

cv-2090-AS, ECF 9 at 5-6 (C.D. Cal. May 8, 2026) (ordering release instead of a bond hearing for an individual entitled to a bond hearing under *Maldonado Bautista*, though doing it on due process grounds). Like these courts, this Court concludes release is the appropriate remedy here, considering the unique circumstances of this case.

To be clear, the Court's order does not prevent immigration authorities from taking steps to detain Petitioner under § 1226(a) or any other applicable provision of law; it simply finds that this detention was unlawful from its inception and that the proper remedy is release.

## III. Conclusion

Accordingly, the Petition (ECF 1) is granted. Petitioner Domingo Diego Cristobal (A# 221-462-434) is **ordered immediately released on reasonable conditions**.

The Petition raises claims other the one challenging whether his detention was appropriate under § 1226(a). Respondent did not respond to those claims. Their failure to do so would have provided an alternative basis for this decision. *Martinez v. Sessions*, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); *Am. Int'l Enters., Inc. v. F.D.I.C.*, 3 F.3d 1263, 1266 n.5 (9th Cir. 1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned."). That is, where the opposing party offers no reason to reject a particular claim, the Court is not duty-bound to go find a reason for them—indeed, the party presentation principle requires it to do the opposite. *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) ("[A]s a general rule, our system is designed around the premise that [parties represented by competent

counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (cleaned up). In light of the relief granted on the § 1226(a) claim, however, the Court will deem those other claims moot.

Petitioner's counsel shall file a status report confirming Petitioner's release within three days of his release from custody and shall report any delay in Petitioner's release. Upon receipt of such confirmation, judgment will issue and the Court will close the case.

If Petitioner's counsel seeks EAJA fees, counsel shall file a timely motion with supporting documentation.

IT IS SO ORDERED

cc: Counsel of Record

Initials of Preparer: ch